**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3287
_____

WEI WENG a/k/a YONG QIANG WANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(BIA-1 No. A073-183-565)
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 7, 2015

Before: FUENTES, SLOVITER, and ROTH, *Circuit Judges*

(Filed: October 15, 2015)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*:

Wei Weng challenges the Board of Immigration Appeals's denial of his motion to reopen decade-old immigration proceedings.

Weng is a Chinese national who, after arriving in the United States, applied for asylum in 1993.[1] He was thereafter charged with unauthorized entry and removability. In February 1997, an immigration judge held a hearing in Philadelphia on the charges and on Weng's asylum petition. Neither Weng nor his counsel attended—according to Weng because they did not receive notice—and Weng was ordered deported in absentia.

Weng remained in the country, married a Chinese asylee, and had two children. In 2008, he filed a motion to reopen supported by a new asylum application.[2] An immigration judge denied the motion, but the Board vacated and remanded on the basis that the immigration judge did not sufficiently explain her reasoning. On remand, Weng argued his case should be reopened because (a) he was not notified of the hearing in which he was ordered deported in absentia; and (b) he was likely to be persecuted in China under the country's one-child policy. Weng further argued that he was entitled to adjustment of status on the basis of the lawful permanent resident status of his wife. The immigration judge rejected the first two arguments, concluding that immigration authorities adequately notified Weng and/or his attorney of the 1997 hearing, and that, while changed country circumstances can be a basis for reopening an immigration case,

_____

[1] The record and the briefs are not consistent on whether Weng first arrived in the United States in 1990, 1992, or 1993.

Weng's new circumstances were changes in personal circumstances that did not warrant reopening. Sua sponte, however, the immigration judge found that Weng might show ineffective assistance of counsel regarding his actual knowledge of the date and location of his 1997 hearing. She ordered the petition reopened without assessing Weng's entitlement to adjustment of status.

On appeal to the Board, the Board upheld the immigration judge's determination that Weng was effectively notified of the 1997 hearing and that Weng failed to show changed country conditions. The Board vacated, however, the immigration judge's sua sponte determination that Weng's petition should be reopened because of ineffective assistance of counsel. According to the Board, even if Weng had attended the 1997 hearing, his asylum application would have then failed because it "was based on a fabricated claim and supported by false documents [and] he has not shown there would have been any other basis for relief from deportation even if he had appeared at the hearing." Concluding that Weng was not entitled to a change in status, either, the Board denied the motion to reopen, and this petition followed.[3]

"We review the [Board]'s denial of a motion to reopen for abuse of discretion, and review its underlying factual conclusions related to the motion for substantial evidence."[4]

---

[2] The new application was filed under the name Yong Qiang Wang.

[3] We have jurisdiction over a petition for review of a final order of removal under 8 U.S.C. § 1252.

[4] *Caushi v. Att'y Gen. of U.S.*, 436 F.3d 220, 225-26 (3d Cir. 2006) (internal citations omitted).

We may only reverse if the denial was "arbitrary, irrational, or contrary to law."[5] Here, Weng presents four arguments for why we should vacate or reverse the decision of the Board. Each lacks merit.

First, Weng argues that the Board lacks jurisdiction to review an immigration judge's decision to reopen a case sua sponte, such that the Board could not have vacated the immigration judge's order here. Generally speaking, "[t]he [Board]'s authority to sua sponte reopen removal proceedings comes from 8 C.F.R. § 1003.2(a), which states that '[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision.'"[6] Meanwhile, "[t]he Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo."[7] Because an ineffective assistance of counsel question is such an issue, Weng's jurisdictional argument is unavailing.[8]

Second, Weng argues that the Board abused its discretion by concluding that ineffective assistance of counsel did not warrant sua sponte reopening here. Whether or not Weng is right on the merits, this is no basis for relief, for "the [Board] has 'unfettered

---

[5] *Id*. at 226.

[6] *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 128 (3d Cir. 2012).

[7] 8 C.F.R. § 1003.1(d)(3)(ii).

[8] Weng further suggests that the Board was wrong to reverse the immigration judge's ineffectiveness determination because the Board's analysis was inconsistent with its past practice and/or arbitrary and capricious for want of established policy. We see no basis for either argument.

4

discretion to decline to sua sponte reopen,' even when there is an exceptional situation[.]"[9]

Third, Weng argues that his wife's status as a lawful permanent resident and asylee entitles to him to change his own status under 8 U.S.C. § 1255(a). Section 1255(a) provides that "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted . . . to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." The Board rejected this argument on the basis that there was no indication that Weng had filed a visa application.[10] Further, the Board noted that the record was inconsistent as to whether Weng was "admitted or paroled into the United States or whether he entered without inspection." Consistent with this latter analysis, there is record evidence suggesting Weng entered Hawaii in 1992, went back to China, and then returned to New York in 1993, such that Weng has forfeited the status of an "admitted or paroled" alien. As this provides a factual basis for the Board's assessment that is well-grounded in the record, we cannot conclude that the Board's determination on

---

[9] *Chehazeh*, 666 F.3d at 129 (quoting *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003)).

[10] The immigration judge, by contrast, explained that "while there [was] no evidence in the record that [the relevant] form had been filed, the fact that [Weng] and his wife have a child together is a strong factor weighing in favor of a finding that their marriage is bona fide." According to Weng's brief, the relevant I-130 form was filed on June 29, 2011 and

this point was arbitrary, irrational, or contrary to law."[11]

Finally, Weng argues that he is qualified for a favorable exercise of prosecutorial discretion under Department of Homeland Security policy. Though the government makes no attempt to explain why deportation of Weng comports with the Department's current immigration priorities, it need not do so. The Department of Homeland Security's exercise of its jurisdiction is beyond our review.[12]

As we lack a basis to conclude the Board's decision was "arbitrary, irrational, or contrary to law" we will deny the petition to reopen.[13]

---

approved on September 16, 2013, while the instant federal petition was pending.

[11] *Caushi*, 436 F.3d at 225-26.

[12] *See Cheruku v. Att'y Gen. of U.S.*, 662 F.3d 198, 211-12 (3d Cir. 2011) (McKee, C.J., concurring) ("Some of the discretionary factors that [Immigration and Customs Enforcement] will consider include the person's criminal history or lack thereof, whether the person is otherwise likely to be granted temporary or permanent status or other relief from removal, and the person's length of presence in the United States. [But] it is certainly not our place to tell an administrative agency how to apply its policies . . . .").

[13] *Caushi*, 436 F.3d at 226.